**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kyle Howard,<br><br>          Plaintiff,<br><br>v.<br><br>Environmental Fluids Incorporated, et al.,<br><br>          Defendants. | No. CV-25-00088-PHX-DWL<br><br>**ORDER** |

Pending before the Court are two motions: (1) Plaintiff's motion to strike the answer of Defendant Environmental Fluids Inc. ("EFI") and enter a default against EFI (Doc. 48); and (2) Plaintiff's motion for default judgment against Defendant Casey Amundson ("Amundson") (Doc. 46).

**RELEVANT BACKGROUND**

On January 10, 2025, Plaintiff brought this action under the Fair Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act ("AMWA"), and the Arizona Wage Act ("AWA"). (Doc. 1 ¶ 1.) Plaintiff alleges that he was hired by EFI in December 2021 pursuant to a written employment agreement (*id.* ¶ 27); that three EFI employees—Amundson, Ryan Esner, and Edward Esner (together, "the Individual Defendants")—also qualified as his "employers" under the FLSA because they "had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with [his] employment with EFI" (*id.* ¶ 16-17); that his employment agreement

contained a provision entitling him to an annual commission payment, the size of which would be calculated based on a specified formula (*id.* ¶ 28); that he repeatedly emailed Defendants in 2024 regarding his unpaid annual commission payment for 2023 and initially received assurances that he would receive the payment (*id.* ¶¶ 29-42); and that on September 24, 2024, he was terminated (*id.* ¶ 43). "To date, Defendants have still paid no wages to Howard for the seven days worked before his termination or his earned commissions pursuant to the Employment Agreement." (*Id.* ¶ 47.)

Based on these allegations, the complaint asserts three claims against EFI and the Individual Defendants: (1) a claim for "failure to pay minimum wage" under the FLSA, which is premised on the failure to pay Plaintiff any wages during "the final seven days of his employment" (*id.* ¶¶ 57-60); (2) a claim for "failure to pay minimum wage" under the AMWA, which is likewise premised on the failure to pay Plaintiff any wages during "the final seven days of his employment" (*id.* ¶¶ 61-64); and (3) a claim for "failure to pay wages due and owing" under the AWA, which is premised both on the failure to pay Plaintiff any wages "for the seven days before he was terminated" and on the failure to make the commission payments to which Plaintiff was entitled (*id.* ¶¶ 65-71).

On January 23, 2025, Plaintiff served Amundson. (Doc. 19.) However, because Plaintiff did not initially file proof of service on the docket, the Clerk dismissed Amundson for purported lack of service. (Doc. 18.) Plaintiff then filed the proof of service and successfully moved to reinstate Amundson as a defendant. (Docs. 19, 21, 22.)

On February 25, 2025, Plaintiff served EFI. (Doc. 15.) EFI later appeared through counsel and filed an answer. (Docs. 16, 30.)

On June 26, 2025, after Amundson failed to respond to the complaint, Plaintiff moved for entry of default against Amundson. (Doc. 31.) That same day, the Clerk entered the default. (Doc. 32.)

On August 29, 2025, EFI's counsel moved to withdraw. (Doc. 41.)

On September 19, 2025, the Court granted EFI's counsel's motion to withdraw. (Doc. 44.) The Court further ordered that EFI, "which cannot proceed without

1  representation, shall retain new counsel and file a notice of appearance via new counsel by
2  September 26, 2025." (*Id.*)  EFI did not comply with that order—EFI has not engaged in
3  any litigation activity, including retaining new counsel, since the issuance of the September
4  19, 2025 order.

5  On October 17, 2025, Plaintiff filed the pending motion for default judgment against
6  Amundson.  (Doc. 46.)  Amundson has not responded and the time to respond has expired.

7  On November 10, 2025, Plaintiff filed the pending motion to strike EFI's answer
8  and enter default against EFI.  (Doc. 48.)

**DISCUSSION**

I.  Plaintiff's Motion As To EFI

Under Rule 55(a), the Clerk must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Plaintiff requests the entry of default against EFI and appears to contend that Rule 55(a) is satisfied, even though EFI filed an answer, because EFI thereafter failed to "otherwise defend" by ignoring the directive in the September 19, 2025 order to retain counsel.  (Doc. 48 at 2.)

The law is unsettled on how Rule 55(a) applies in this circumstance.  A minority of courts hold that a default cannot be entered under Rule 55(a) against a party that has filed an answer, even if that party subsequently fails to defend, while the majority of courts agree with Plaintiff that a default may still be entered under Rule 55(a) in this scenario.  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 917-18 (2d Cir. 1992) (rejecting the defendant's argument "that Rule 55 cannot be used to impose a default against a defendant who has filed an answer and actively litigated during pretrial discovery," explaining that this approach is consistent with the "broad interpretation of the 'or otherwise defend' clause" adopted by many circuits, but "acknowledg[ing] that some courts have stated that a Rule 55 default cannot be based on a failure to appear at trial"); *In re Nestor*, 607 B.R. 742, 744 (Bankr. S.D. Fla. 2019) ("The meaning of 'or otherwise defend' language of Rule 55(a) is the subject of a circuit split.  A party who is served with a complaint has three options: (1) plead, (2) 'otherwise defend' or (3) suffer a default, according to at least a

minority of the circuits. Other circuits seem to read Rule 55(a) to offer only two options: (1) plead and otherwise defend or (2) suffer a default. The majority view would permit the entry of a default judgment if a defendant failed to appear at trial after answering a complaint—only pleading <u>and</u> defending the action would prevent the default judgment.") (cleaned up).

Some courts and commentators have indicated that the Ninth Circuit's decision in *Ringgold Corp. v. Worrall*, 880 F.2d 1138 (9th Cir. 1989), shows that the Ninth Circuit adheres to the majority view on this topic. *See, e.g.*, *Hoxworth*, 980 F.2d at 918 (citing *Ringgold* as "affirming [a] Rule 55 default judgment" against a party that failed to attend pretrial conferences and the first day of trial); Jessica Ruoff, Note, *Rule 55: Why Broadly Interpreting "Otherwise Defend" Protects a Diligent Party's Rights & Encourages an Orderly & Efficient Judicial System*, 88 ST. JOHN'S L. REV. 467, 480 & n.110 (2014) (stating that "[t]he majority of federal circuits—the First, Second, Third, Fourth, Eighth, and Ninth Circuits—faced with the issue of interpreting Rule 55 . . . interpret 'otherwise defend' broadly to encompass entry of default against parties that answer a complaint but fail to appear at trial or participate in pretrial proceedings" and citing *Ringgold* as the relevant Ninth Circuit authority). The Court, however, does not view *Ringgold* as resolving this particular issue. There, the appellants (a corporation and several individuals) initially participated in the lawsuit but then stopped paying their attorneys, failed to obtain new counsel after their attorneys withdrew, and failed to appear at the final pretrial conference. *Ringgold*, 880 F.2d at 1140. The district court, in turn, "directed the [appellees] to file a motion for default with a hearing set" on a specified date, and the appellees responded by "fil[ing] a motion for entry of default and default judgment." *Id.* On the hearing date, the appellants failed to appear, the appellees presented damages-related evidence, and the district court entered default and a default judgment against the appellants that exceeded $800,000. *Id.* The appellants then moved to set aside the default judgment, arguing it was void "because of the [appellees'] failure to comply with the notice requirements of Fed.R.Civ.P. 55(b)(2)," but the district court rejected this argument and the Ninth Circuit

- 4 -

affirmed. *Id.* at 1140-41. Notably, the Ninth Circuit was not asked to decide—and did not decide—whether the district court had erred by entering a default *under Rule 55(a)*. Indeed, *Ringgold* does not mention Rule 55(a) and does not specify whether the district court even relied on Rule 55(a)—which prescribes when "*the clerk* must enter the party's default"—when the district court "granted the Worralls' motion for an entry of default and default judgment." *Id.* at 1140. Instead, the Ninth Circuit simply held that "[t]he notice requirements of Rule 55(b)(2) are inapplicable to this case" because "[t]his is not a typical default judgment, where a party shows no interest in defending a claim" and cited a Second Circuit case for the proposition that "[i]n this context, a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the *sanction of default* for non-attendance occurring after a trial has begun." *Id.* at 1141 (quoting *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986)) (emphasis added).

*Ringgold*'s reference to the notion of a "sanction of default" helps explain why it is unnecessary, in this case, to delve too deeply into the weeds of how Rule 55(a) operates in the Ninth Circuit. If, as Plaintiff contends, Rule 55(a) permits the entry of default against a party that previously answered but then failed to appear, then Plaintiff's motion could be granted to the extent it seeks the entry of default against EFI.[1] This would, in turn, set the stage for Plaintiff to file a motion for default judgment against EFI. But even if Rule 55(a) does not permit the entry of default in this circumstance, there is a different—and arguably more efficient—path to get where Plaintiff hopes to go. "District courts have inherent power to control their dockets. In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986). Thus, the Court may rely on its inherent power to enter a default judgment against ESI as a sanction for its failure to comply with

---

[1] Plaintiff's motion also asks the Court to strike EFI's answer. (Doc. 48 at 2.) Although the Court is skeptical that Rule 55 itself authorizes this form of relief, and Plaintiff has not identified any other rule or statute that would authorize this outcome, *see* LRCiv 7.2(m), the Court may strike EFI's answer pursuant to its inherent authority, as discussed in footnote 2 *infra*.

- 5 -

the September 19, 2025 order to obtain counsel. *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may appear in federal court only through licensed counsel. An attorney appeared for High Country in the district court for the limited purpose of filing an answer and cross-complaint. When it became apparent that Crisler (who was not a licensed attorney at that time) was attempting to represent High Country, the district court ordered High Country to retain counsel for the duration of the litigation. When High Country failed to do so, the district court entered a default judgment against it; this was perfectly appropriate."). Some authorities suggest this approach is preferable to entering a default pursuant to Rule 55(a). *Burtscher v. Moore*, 611 F. App'x 456, 457 (9th Cir. 2015) ("[T]he district court improperly ordered the clerk to strike Moore's answer and to enter default against Moore under Fed.R.Civ.P. 55(a) after Moore filed an answer and, for a time, participated in the litigation. Although the district court has inherent power to impose the sanction of default for failure to participate in litigation, in directing default to be entered under Rule 55(a), the court did not exercise its own authority and make findings justifying a default sanction.") (cleaned up). *Cf.* 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 55 (2025) ("[J]udges have ample authority in the rules to deal with situations where defendants show a desire to defend but then, as the case progresses, fail to participate fully or properly as later events require. For those types of downstream failures, judges should rely on the penalty provisions of those rules . . . rather than expand Rule 55 to reach beyond the initial stages of the lawsuit."). The Court will follow that approach here, which renders Plaintiff's motion as to EFI moot.

*Ringgold* clarifies that "the notice requirements of Rule 55(b)(2) are inapplicable" when default judgment is imposed as a sanction rather than under the aegis of Rule 55. *Ringgold*, 880 F.2d at 1141. Nevertheless, to sanction a defendant in this fashion, certain requirements must be met, one of which involves a notice requirement separate from the requirements of Rule 55. There are "five factors that a district court must consider before dismissing a case or declaring a default: (1) the public's interest in expeditious resolution

- 6 -

of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Id.* The third factor, the risk of prejudice to the other party, weighs in favor of declaring a default where, as here, a corporate defendant has not taken the step of retaining counsel, without which it cannot proceed, and has become entirely unresponsive. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Id.* It follows that it must be prejudicial to the plaintiff when a defendant's *inaction* impairs the plaintiff's ability to go to trial and have the case decided.

The fifth factor, the availability of less drastic sanctions, generally requires the court to "consider less [drastic] sanctions and discuss them before actually [entering default]" and to "warn the party of the possibility of [default] before actually ordering [default]." *Id.* at 1413. The Court has considered less drastic alternatives and concludes that if EFI continues to be nonresponsive, there is no less drastic sanction than default available to move this case to its resolution. As for warning the party of the possibility of default, this order serves as a warning to EFI. The Court will extend the already-lapsed deadline for EFI to retain new counsel and file a notice of appearance. EFI is expressly warned that failure to retain new counsel and file a notice of appearance by the extended deadline will result in the entry of default and default judgment against EFI.[2] EFI is further warned that,

---

[2] It is unclear whether the answer must be struck as a precursor to ordering a default judgment as a sanction pursuant to the Court's inherent powers. Although the Court has found no rule, statute, or binding authority suggesting this step is necessary, the Court has found some cases where this step was taken. *See, e.g.*, *Yusov v. Yusuf*, 892 F.2d 784, 787 (9th Cir. 1989) ("The [district] court found that no sanction short of striking the answer and entering default was sufficient."); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987) (district court did not abuse its discretion in striking answer and entering a default judgment as a sanction). This appears to be more of a tradition than a procedural imperative. When the court has a reason to enter default judgment that has nothing to do with failure to respond to the complaint, the existence of an answer on the docket is immaterial. *Cf. Emp. Painters' Tr. v. Ethan Enters., Inc.*, 480 F.3d 993, 998 (9th Cir. 2007) ("Ethan nonetheless argues that the default judgment here was an abuse of

- 7 -

1  as is discussed below, any such default judgment will be much larger than the default
2  judgment against Amundson.

3  II.    Plaintiff's Motion For Default Judgment Against Amundson

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Although the Court should consider and weigh relevant factors as part of the decision-making process, it "is not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The "starting point is the general rule that default judgments are ordinarily disfavored." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). The following factors may be considered when deciding whether default judgment is appropriate under Rule 55(b): (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the court accepts as true the complaint's well-pled factual allegations, but the plaintiff must establish the damages sought in the complaint. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

A.    **Possible Prejudice To Plaintiff**

The first *Eitel* factor weighs in favor of default judgment. Amundson has not

---

discretion because it was based solely on its failure to answer the amended complaint, which, Ethan contends, was not properly served. Neither the record nor the law supports Ethan's position. *The district court made clear that it found Ethan in default not for failure to answer the amended complaint but for failure to retain substitute counsel after Brown withdrew*. Although the trusts did file an amended complaint at a time when Ethan was no longer represented by counsel, nothing about that filing itself diverged from the normal course of litigation. Because *Ethan's violation of Local Rule GR 2(f)(4)(B) justified entry of a default judgment against it whether or not service of the amended complaint was effective*, the district court did not abuse its discretion by entering a default judgment and, later, refusing to set it aside.") (emphasis added). Nevertheless, the Court sees no issue in taking this traditional (if perhaps unnecessary) step. Thus, if EFI fails to heed this order, the Court will strike EFI's answer and enter a default judgment against EFI, pursuant to its inherent power.

participated in this action at all—he has not responded to the complaint or to the motion for default judgment. If Plaintiff's motion is not granted, Plaintiff will be without other recourse for recovery against Amundson. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### B. **Merits Of Claims And Sufficiency Of Complaint**

The second and third *Eitel* factors are "the merits of plaintiff's substantive claim" and "the sufficiency of the complaint." *Eitel*, 782 F.2d at 1471. These factors weigh against default judgment when the judge has "serious reservations about the merits of [the] substantive claim, based upon the pleadings." *Id.* at 1472. *See also Aldabe*, 616 F.2d at 1092-93 ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant."). The complaint and its allegations must be sufficient to support the judgment. *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978).

As noted, Plaintiff alleges that Amundson violated the FLSA, the AMWA, and the AWA. (Doc. 1.) In his motion, Plaintiff does not differentiate between these claims and asserts in conclusory fashion that the complaint is "sufficient" and "with merit" as to each claim. (Doc. 46 at 4. *See also id.* at 6 ["Howard filed a well-pleaded Complaint alleging the facts necessary to establish his claims."].)

#### 1. Minimum Wage Claims

The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [specified minimum]." 29 U.S.C. § 206(a).

"To establish a minimum-wage . . . violation of the FLSA, Plaintiff must establish three elements: (1) he was an employee of Defendants; (2) he was covered under the FLSA, and (3) Defendants failed to pay him minimum wage." *Leyva v. Avila*, 634 F. Supp. 3d 670, 675 (D. Ariz. 2022) (cleaned up). As for the first element, "employee," subject to a few narrow exceptions not relevant here, "means any individual employed by an

employer," 29 U.S.C. § 203(e)(1), and "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d), such that where an individual, such as an owner, officer, or manager, "exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (cleaned up). As for the second element, "coverage exists if either the employee is engaged in commerce (individual coverage), 29 U.S.C. § 203(b) (defining 'commerce' as 'trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof'), or the employer is an enterprise engaged in commerce (enterprise coverage, 29 U.S.C. § 203(s) (defining 'enterprise engaged in commerce' as enterprises that, *inter alia*, have annual gross revenue of $500,000 or greater)." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914 (9th Cir. 2003). As for the third element, the complaint must "allege facts showing that there was a given week in which he was entitled to but denied minimum wages." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014).

The elements of a minimum wage claim under the AMWA appear to mirror the first and third elements of a minimum wage claim under the FLSA. Similar to the FLSA, "for purposes of an AMWA claim (*i.e.,* failure to pay minimum wages), the term 'employer' is . . . broadly defined to include 'any corporation, proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, [and] individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee.'" *Rosen v. Fasttrak Foods LLC*, 2021 WL 2981590, *5 (D. Ariz. 2021) (quoting A.R.S. § 23-362(B)) (emphasis omitted). And Arizona law appears to "apply a 'workweek requirement' analogous to that provided by the FLSA," such that the complaint must "allege a workweek in which [the employee] failed to receive the minimum wage." *In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387, 407-08 (6th Cir. 2018).

The complaint alleges that Amundson "had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Howard's employment with EFI." (Doc. 1 ¶ 17.) This is sufficient to establish that Plaintiff was Amundson's employee under the FLSA and the AMWA.

The complaint further alleges that "EFI is, and was at all relevant times, an enterprise engaged in interstate commerce that has/had annual gross sales made or business done of at least $500,000." (*Id.* ¶ 7.) This is sufficient to establish that Plaintiff was covered under the FLSA.

The complaint's allegations regarding a given week in which Plaintiff was entitled to but denied minimum wages are somewhat vague and potentially inconsistent. The complaint alleges that "[o]n September 24, 2024, Defendants terminated [Plaintiff]." (*Id.* ¶ 43.) The complaint also alleges that Defendants "failed to pay [Plaintiff] for seven days of earned wages *after termination*." (*Id.* ¶ 45, emphasis added.) Elsewhere, however, the complaint alleges that "[t]o date, Defendants have still paid no wages to Howard for the seven days worked *before his termination*." (*Id.* ¶ 47, emphasis added.) The complaint concludes that "[a]s a result of not having paid the earned wages for seven days *upon* [Plaintiff's] termination, Defendants failed to pay the applicable minimum wage to Plaintiff," emphasizing that Defendants failed "to compensate [Plaintiff] with any wage whatsoever for seven days that [Plaintiff] worked." (*Id.* ¶¶ 48-50, emphasis added.) The complaint later asserts that Plaintiff was not paid "any wage whatsoever for the final seven days of his employment." (*Id.* ¶¶ 58, 62.)

In light of the various allegations suggesting that the unpaid work period entailed the final seven days of Plaintiff's employment, the Court concludes that the allegation in paragraph 45 that Defendants "failed to pay [Plaintiff] for seven days of earned wages *after termination*" is either an inadvertent drafting error or a syntactic inelegancy intended to mean that Defendants failed to pay Plaintiff, after his termination, for work he completed before his termination. This interpretation is supported by Plaintiff's declaration, which

states that he "was not paid the pro-rated portion of [his] salary for the period between September 15, 2024, and the date of [his] termination, September 24, 2025." (Doc. 46-1 ¶ 11.)

Unfortunately, although the complaint alleges that Plaintiff "worked" during these seven days (Doc. 1 ¶¶ 47, 49-50), it does not allege how much he worked. What matters, for an FLSA minimum wage claim, is the number of hours worked within a given week. *Adair v. City of Kirkland*, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999) (citing, with approval, an Eighth Circuit decision and providing the following quotation from that decision in a parenthetical: "No violation of the FLSA's minimum wage requirements occurs so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement") (cleaned up). The calculation under the AMWA is the same. *In re: Amazon.Com*, 905 F.3d at 407.

With that said, the Ninth Circuit does not "impose a requirement that a plaintiff alleging failure to pay minimum wages . . . must approximate the number of hours worked without compensation." *Landers*, 771 F.3d at 646. Because Plaintiff alleges that he was not paid at all for seven days of work, it is clear that so long as he worked more than zero hours during this timeframe, failure to pay him anything for that week violated the minimum wage provisions of the FLSA and the AMWA.

Thus, the complaint states a plausible claim for relief against Amundson in Count One (FLSA) and Count Two (AMWA).

          2.     <u>AWA Claim</u>

"The term 'employer' is defined more narrowly under AWA than it is under the FLSA or AMWA," such that the AWA does not "authorize individual liability against the owners, officers, and directors of a corporate employer." *Hoppmann v. Pampered Pets & Plants Inc.*, 2024 WL 380973, *8 (D. Ariz. 2024) (citations omitted). Thus, the complaint does not state a plausible claim for relief against Amundson in Count Three (AWA).

…

### 3. Conclusion As To Second And Third *Eitel* Factors

The second and third *Eitel* factors favor default judgment against Amundson as to Counts One and Two but not as to Count Three.

## C. **Amount At Stake**

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. The money at stake is relatively modest and authorized by statute. Thus, the fourth factor favors default judgment.

## D. **Possible Dispute Concerning Material Facts**

Given Amundson's lack of participation, "no genuine dispute of material facts would preclude granting [Plaintiff's] motion." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, the fifth factor favors default judgment.

## E. **Excusable Neglect**

Amundson has not participated in any way, despite having been served. There is no indication that Amundson failed to respond due to excusable neglect. Thus, the sixth factor favors default judgment.

## F. **Policy Favoring Merits Resolution**

The last factor usually weighs against default judgment given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The mere existence of Rule 55(b), however, "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. The Court therefore is not precluded from entering default judgment against Amundson.

## G. **Conclusion**

On balance, the *Eitel* factors favor default judgment against Amundson as to Counts One and Two but not as to Count Three.

## H. **Damages**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes*, 559 F.2d at 560. "A default judgment must not differ in kind from, or exceed in amount, what is

1 demanded in the pleadings." Fed. R. Civ. P. 54(c). A plaintiff must "prove 2 all damages sought in the complaint." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 3 219 F.R.D. 494, 498 (C.D. Cal. 2003). "[A] default judgment for money may not be 4 entered without a hearing unless the amount claimed is a liquidated sum or capable of 5 mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). District 6 courts within the Ninth Circuit have held that written affidavits or declarations are 7 acceptable in lieu of a hearing. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100-01 (N.D. 8 Cal. 2014) ("To recover damages after securing a default judgment, a plaintiff must prove 9 the relief it seeks through testimony or written affidavit."); *Wecosign, Inc. v. IFG Holdings,* 10 *Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[A] 'hearing' . . . need not include live 11 testimony, but may instead rely on declarations submitted by the parties, so long as notice 12 of the amount requested is provided to the defaulting party.").

13 Plaintiff has submitted a declaration stating that he was contractually entitled to $2,079 in wages for his final seven days of work and was contractually entitled to $139,219 in unpaid commissions. (Doc. 46-1.) The problem is that these calculations would only be useful for purposes of establishing Plaintiff's damages under Count Three, his AWA claim. But as discussed, Plaintiff has not stated a plausible claim for relief against Amundson in relation to Count Three.

19 Nor has Plaintiff provided sufficient information to calculate his damages in relation to his FLSA and AMWA claims against Amundson in Counts One and Two. The methodology for calculating such damages is straightforward—it involves multiplying the number of hours worked by the applicable minimum wage, which was $14.35/hour in 2024 for AMWA purposes and $7.25/hour in 2024 for FLSA purposes.[3] *See generally Salgado*

---

[3] Plaintiff's motion for default judgment seems to suggest that the complaint asserts a claim for unpaid wages (as opposed to unpaid minimum wages) under the FLSA that encompasses all of the unpaid wages at issue in this case (as opposed to the unpaid wages only for Plaintiff's last week of work). (Doc. 46 at 4 ["Howard's unpaid wage claim is based on a violation of the Fair Labor Standards Act, which provides for the recovery of unpaid wages and liquidated damages, as well as on a violation of Arizona law, which allows for the recovery of treble damages for unpaid wages."].) This is inaccurate. The FLSA claim in Count One is expressly characterized as a claim for "the FLSA-mandated minimum wage" that is premised solely on "not paying [Plaintiff] any wage whatsoever for the final seven days of his employment." (Doc. 1 ¶ 58.) The only claim that

- 14 -

*v. Synergy Payment Solutions Inc.*, 2024 WL 4492467, *3 (D. Ariz. 2024) ("Plaintiff seeks $4,305 in damages on his AMWA claim. These damages are capable of mathematical calculation—100 (the number of unpaid hours Plaintiff worked during his final two work weeks) multiplied by $14.35 (Arizona's minimum wage in 2024) equals $1,435, and that sum must be trebled under A.R.S. § 23-364(G), which brings the total to $4,305. Plaintiff is awarded these damages, for which all Defendants are jointly and severally liable. Turning to his FLSA claim, Plaintiff notes that his AMWA recovery 'engulfs [his] federal minimum wage damages.'"). However, Plaintiff's declaration does not identify how many hours he worked during his final seven days of employment. Plaintiff must submit a declaration setting for the number of hours he worked during this timeframe.

Because this order determines that Plaintiff is entitled to default judgment against Amundson on Counts One and Two, this order grants default judgment to Plaintiff against Amundson on those counts, in an amount to be determined following receipt of Plaintiff's declaration.

Accordingly,

**IT IS ORDERED** that:

1. Plaintiff's motion to strike answer and enter default as to EFI (Doc. 48) is **denied as moot**.

2. The deadline for EFI to retain new counsel and file a notice of appearance is extended to **December 5, 2025**. EFI is warned that failure to retain new counsel and file a notice of appearance by this deadline will result in the entry of default and default judgment against EFI.

3. The Clerk of Court shall mail this order to Environmental Fluids Inc., 4241 N. Winfield Scott Plaza Ste 101, Scottsdale, AZ 85251, and to Environmental Fluids Inc., c/o Ed Esner, at 9901 East Edgestone Drive Scottsdale, Arizona 85255, and shall email a copy of this order to Environmental Fluids Inc., c/o Ed Esner, at ed@efmaterials.com.

---

encompasses the unpaid bonuses/commissions is Count Three, the AWA claim. (*Id.* ¶¶ 68, 71.)

4. Plaintiff's motion for default judgment as to Amundson (Doc. 46) is **granted in part and denied in part**.

5. Within 7 days of the issuance of this order, Plaintiff shall file a declaration setting forth the number of hours he worked during the last seven days of his employment with Defendants.

Dated this 19th day of November, 2025.

_____
Dominic W. Lanza
United States District Judge